# Richmond

## Northern Neck Mutual Fire Association of Virginia v. W. M. Turlington and James S. Turlington, Trading as Deep Sea Fishing Company.

March 15, 1923.

1. Appeal and Error—*Supersedeas Bond not Conforming to Statute—Duty of Defendant in Error or Appellee.*—Where the condition of a supersedeas bond does not conform to the statute (Code of 1919, section 6351), good faith requires that the defendant in error or appellee should make a motion for the dismissal of the writ of error or appeal before the expiration of the time within which a new bond can be given, so that it can be amended or corrected, and the failure to do so will be deemed a waiver of the objection to the supersedeas bond.

2. Appeal and Error—*Supersedeas Bond not Conforming to Statute—Duty of Defendant in Error or Appellee—Case at Bar.*—In the instant case when the case was called for argument in the Supreme Court of of Appeals, defendants in error moved to dismiss the writ of error upon the ground that the condition of the supersedeas bond did not conform to the statute. The bond was not executed until October 20, 1921, and the year within which it could have been given expired on the next day, October 21.

   *Held:* That while this would have doubtless excused the failure to make the motion to dismiss the writ of error within the year upon the ground that the condition of the supersedeas bond did not conform to the statute, it did not relieve defendant in error from the obligation to make it promptly just as soon as the error was discovered, so that it could be cured by the tender of a better bond, before the case was called in the Supreme Court of Appeals.

3. Appeal and Error—*Supersedeas Bond—Failure to Comply with Statute.*—Where a supersedeas bond failed to conform to the statute in that it failed to specify and provide for "all actual damages incurred in consequence of the supersedeas," in case of affirmance, even if the bond ought to be held invalid as a supersedeas bond, it is sufficient to support a writ of error and to sustain the jurisdiction of the Supreme Court of Appeals.

4. Appeal and Error—*Supersedeas Bond—Failure to Comply with Statute—Condition of Statute Read into Bond.*—Where a supersedeas bond clearly failed to conform to the statute, but there was no doubt that the obligors thereto intended to execute a bond in strict conformity

Syllabus.

therewith, and the mistake was a mere misprision of the clerk, a motion to dismiss the writ of error therefor will be overruled.

5. APPEAL AND ERROR—*Supersedeas Bond—Condition of Statute Read into Bond.*—The condition which the statute (Code of 1919, section 6351) prescribes for a supersedeas bond is to be read into every statutory supersedeas bond which has been taken since its enactment. Thus, where the bond omits to specify and provide for "all actual damages incurred in consequence of the supersedeas," the court will read the statutory condition into the bond.

6. INSURANCE—*Authority of Insurance Agents—Clerks and Employees.*—An insurance agent authorized to accept risks, to agree upon and settle terms of insurance, and to carry them into effect by issuing and renewing policies, must be regarded as a general agent of the company, and as a consequence the company is responsible, not only for the acts and declarations of such general agents within the scope of their authority, but also for the acts and declarations of clerks and employees of such agents, to whom the latter delegate authority to discharge their functions within the scope of the agent's authority and while engaged about the business of the principal. Such authority, however, is vested in agents with large power, and not in agents with limited authority, and the clerks and employees referred to are clerks and employees under the immediate direction and supervision of such general agents.

7. INSURANCE—*Mutual Insurance—Authority of Agents—Notice of Charter, Constitution, and By-Laws.*—Persons dealing with a mutual insurance corporation are affected with notice of the provisions and limitations of its charter, constitution, and by-laws, and an agent whose powers are limited thereby to receiving and forwarding applications for insurance, together with the premiums, to the company for acceptance or rejection, can make no contract of insurance binding the company.

8. INSURANCE—*Mutual Insurance—Power of Agents—Notice of Charter, Constitution, and By-Laws—Case at Bar.*—A by-law of a mutual insurance company provided that there should be a written application by every person desiring insurance. And that such persons should sign the application and thereby agree to conform to all the rules of the association; that the application should be recommended by some person in the locality; that the application should be forwarded to the home office for approval; and that no recovery could be had for loss or damage occurring prior to noon of the day of the approval of the application. In the instant case, an action against the mutual insurance company, none of these prerequisites to the contract of insurance existed. All that appeared was that there was negligence and delay on the part of a subagent, whose powers were

> limited, in failing to write up the application and present it for signature.
>
> *Held:*  That the burden was upon the plaintiff to establish the alleged contract for insurance, and that mere negligence and delay of the subagent did not establish a contract with the company.

Error to a judgment of the Circuit Court of Accomac county, in a proceeding by motion for a judgment for money.  Judgment for plaintiff.  Defendant assigns error.

*Reversed.*

The opinion states the case.

*Mapp & Mapp,* for the palintiff in error.

*James E. Heath* and *S. James Turlington,* for the defendant in error.

Prentis, J., delivered the opinion of the court.

[1]  When this case was called for argument here, the defendants in error, hereafter called the plaintiffs, moved to dismiss the writ of error upon the ground that the condition of the supersedeas bond does not conform to the statute (Code, section 6351).  The duty of a defendant in error or appellee, under such circumstances, is clearly indicated in the case of *Virginia Fire and Marine Ins. Co.* v. *New York, etc., Co.,* 95 Va. 515, 28 S. E. 888, 40 L. R. A. 237—that is, that good faith requires that he should make the motion before the expiration of the time within which a new bond can be given, so that it can be amended or corrected, and that failure to do so will be deemed a waiver of such objection.

[2]  It is claimed in this case that this rule cannot be applied because the bond here was not executed until October 20, 1921, and the year within which it could

have been given expired on the next day, October 21st. This doubtless excuses the failure to make the motion within the year, but it does not relieve from the obligation to make it promptly just as soon as the error was discovered, so that it could be cured by the tender of a better bond before the case was called in this court.

[3-5] The condition of the bond in this case is, that "if The Northern Neck Mutual Fire Association of Virginia, a corporation, shall perform and satisfy the said judgment in case the same be affirmed, or the said writ of error and supersedeas be dismissed, and shall also pay all damages, costs and fees which may be awarded against or incurred by William M. Turlington and S. James Turlington, trading as The Deep Sea Fish Company, then this obligation to be void   *   *   ."

The condition required by the statute is "to perform and satisfy the judgment, decree, or order, or the part thereof, proceedings on which are stayed, in case the said judgment, decree, or such part be affirmed, or the appeal, writ of error, or supersedeas be dismissed, and also to pay all damages, costs and fees which may be awarded against or incurred by the appellants or petitioners, in the appellate court, and all actual damages incurred in consequence of the supersedeas," etc.

The bond, then, clearly fails to conform to the statute. There can be no doubt, however, that the obligors thereto intended to execute a bond in strict conformity therewith, and the mistake is a mere misprision of the clerk. A similar question was determined by this court in the case of *Bemis* v. *Commonwealth*, 113 Va. 489, 75 S. E. 115, and it is there held that the condition which the statute prescribes is to be read into every statutory supersedeas bond which has been taken since its enactment. In that case as well as in this the condition of the bond failed to specify and provide for

"all actual damages incurred in consequence of the supersedeas," in case of affirmance, but this court sustained a recovery of such damages because it read the statutory condition into the bond.    This view certainly effectuates the purpose of the statute and the intention of the parties.    It is also true that even if this bond ought to be held invalid as a supersedeas bond, it is sufficient to support the writ of error and to sustain the jurisdiction of this court.    The motion to dismiss is therefore overruled.

Another error assigned is that the court rejected the defendant's plea in abatement and motion to quash the process, upon the ground that it had not been served in the manner directed by the statute then in effect.    Inasmuch as this statute regulating such service has been amended and the case is to be disposed of upon the merits, we think that no good purpose would be served by discussing this question, which is not likely again to arise.

The proceeding is a motion for judgment, alleging a parol contract for the insurance of certain rope belonging to the plaintiffs, which was destroyed by fire.    There was a verdict and judgment for the plaintiffs and this is under review.    Several errors are assigned, but we think it necessary to refer to but one other.

It appears that the plaintiff in error, hereinafter called the company, is a mutual insurance company, and section one of its by-laws is in these words:

"Any person wishing to insure in this association shall make written application through an authorized agent or officer of the association (who shall, if practicable, examine the property, giving a written description or survey thereof), asking an amount of insurance not exceeding three-fourths the present cash value (exclusive of land) of the property, and pay therefor the entrance

fee stipulated.    When the party applying for the insur-
ance shall have signed the application, thereby agreeing
to conform to all the rules and regulations of the associ-
ation as they may from time to time be enacted, the
agent shall have the application recommended by some
person in that locality acceptable to the secretary, and
forward it to the home office.    If the secretary approve
of the risk he shall issue to applicant a policy of insur-
ance; and if he do not approve of it he shall return the
fee to the agent, who shall return it to the applicant.
No recovery can be made for loss or damage occurring
prior to noon of day of approval of the application by
the secretary; but the insured shall not be assessed in
Class X until two months, or in Class A until four
months, after date of issuance of his policy.    This as-
sociation reserves the right to reject, through its
secretary-manager, or board of directors, any applica-
tion."

The alleged oral contract which is relied upon arose
under these circumstances:    One Adams was the dis-
trict agent of the company in charge of its business in
Accomac county.    He had appointed Gilbert F. Stiles
his subagent.    This subagent was approached by one
of the plaintiffs and asked for insurance on certain rope
which was then in a building owned by the plaintiffs..
This building had already been regularly insured by the
company, and Stiles agreed that $1,500 insurance should
be placed upon the rope, and that it would be insured
from that date, June 26, 1918.    Nothing more was done
by either.    The fire occurred July 5, 1918, and destroyed
both the building and the rope.    The company prompt-
ly paid the $1,000 insurance on the building, but re-
fused to pay the insurance claimed under the alleged
oral contract.

Upon the first trial the jury disagreed, and upon the
second rendered the verdict complained of.

It is observed, then, that there was never any written application for the insurance, and it is shown that neither the subagent's principal, Adams, nor the company were ever notified of the circumstances related. It is claimed that notwithstanding the by-law requiring written applications and approval by the secretary, that the secretary had authorized the district agent, Adams, to make policies of insurance effective from the date of the application, and that Adams had vested his agent Stiles with similar authority. Adams denies that he had conferred such authority, and it is admitted that no similar contract had ever been made by Stiles, the subagent. The court, over the objection of the company, gave a single instruction, to the effect that the company was as much bound by the acts and declarations of the subagent, Stiles, as if they had been made by Adams, the district agent, and that the company was bound to the same extent as if done or made by the district agent, Adams, in person. Among other instructions refused by the court are these, which were offered by the company:

(c) "The court instructs the jury that those dealing with the defendant company are bound to take notice of the charter, constitution and by-laws of said defendant company, and that no binding contract could be entered into except in the manner prescribed by said charter, constitution and by-laws."

(d) "The court instructs the jury that if they believe from the evidence, that at the time of the alleged application for insurance sued on the constitution of the defendant company provided that all applications for insurance should be submitted to the secretary of said company who should have full authority to accept or reject same, and if they further believe from the evidence that at the time of said alleged application

for the insurance sued on the by-laws of said defendant company provided that there could be no recovery for loss or damage occurring prior to noon of the day of approval of the application by the secretary, in that event the court instructs the jury that the plaintiffs cannot recover, unless said jury believe from the evidence that the alleged application was submitted to the secretary, by him approved, and that said fire occurred after said approval."

(e) "The court instructs the jury that if they believe from the evidence in this case that Gilbert F. Stiles, as subagent of Edwin F. Adams, had authority only to take formal applications of those desiring to insure in The Northern Neck Mutual Fire Association of Virginia, and to forward same to said Edwin F. Adams or to the company for approval, then the said Gilbert F. Stiles had no power to bind said company."

The question sharply presented then is whether or not these facts present a case in which there can be a recovery.

[6] The plaintiffs rely upon the generally accepted principles which were stated by this court in *Goode* v. *Georgia Home Fire Ins. Co.*, 92. Va. 398, 23 S. E. 744, 30 L. R. A. 842, 53 Am. St. Rep. 813, and *Virginia Fire and Marine Ins. Co.* v. *Goode*, 95 Va. 762, 30 S. E. 370. That principle is, that an insurance agent authorized to accept risks, to agree upon and settle terms of insurance, and to carry them into effect by issuing and renewing policies, must be regarded as a general agent of the company and as a consequence that the company is responsible, not only for the acts and declarations of such general agents within the scope of their authority, but also for the acts and declarations of clerks and employees of such agents, to whom the latter delegate authority to discharge their functions within the scope

of the agent's authority and while engaged about the business of the principal. Such authority, however, is vested in agents with large power and not in agents with limited authority, and the clerks and employees referred to are clerks and employees under the immediate direction and supervision of such general agents.

[7] On the other hand, the company relies upon the rule which has frequently been aplied to mutual insurance companies, and is illustrated by the .case of *Haden* v. *Farmers' and Mechanics' Fire Asso.*, 80 Va. 683. There it is distinctly held that persons dealing with such a corporation are affected with notice of the provisions and limitations of its charter, constitution and by-laws, and that an agent whose powers are limited thereby to receiving and forwarding applica-· tions for insurance, together with the premiums, to the company for acceptance or rejection, can make no contract of insurance binding the company. *Moody* v. *Old Dom. Ins. Co.*, 31 Gratt. (72 Va.) 362, 31 Am. Rep. 732; *Bockover* v. *Life Asso. of America*, 77 Va. 91; *Haskins* v. *Ins. Co.*, 78 Va. 700; *Relfe* v. *Rundle*, 103 U. S. (13 Otto) 222, 26 L. Ed. 337.

[8] We think it perfectly clear that this case comes within the principles stated in the cases last cited. Here was a mutual insurance company with a by-law expressly providing that there should be a written application filed by every person who wished to insure in the association, that he as a preliminary should sign the application and thereby agree to conform to all the rules and regulations of the association as they might from time to time be enacted; that the application should be recommended by some person in the locality of the property acceptable to the secretary; that the application should be forwarded to the secretary at the home office for his approval; and that no recovery could

be had for loss or damage occurring prior to noon of the day of the approval of the application by the secretary. In this case none of these prerequisites to the contract of insurance exist. There was no written application, no agreement as to the term of the insurance, though it may be inferred possibly that it was intended to be for one year, no premium paid, no notice either to the district agent or to the company. The burden is upon the plaintiffs to establish the alleged contract for the insurance with the company, and taking the most favorable view of the testimony, all that appears is that there was negligence and delay on the part of the subagent whose powers were limited and defined in failing to write up the application, present it to the plaintiffs for signature, and that neither his immediate principal, Adams, nor the company were notified of the alleged contract; but mere negligence and delay on the part of such an agent does not establish a contract with the company.

The view here indicated is well supported by authority in other jurisdictions, and they are collected in the notes in 15 A. L. R., pp. 995 and 1026.

Our conclusion then is, that the trial court clearly erred in giving the instruction asked for by the plaintiffs, in refusing the instructions "(c)," "(d)" and "(e)" offered by the company, and in overruling the company's motion to set aside the verdict as contrary to the law and the evidence. This court will, therefore, enter here such judgment as to this court seems right and proper, that is, in favor of the defendant company. Code, section 6365.

*Reversed.*

Sims and Burks, JJ., concur in the opinion of the court except that portion of it which approves the holding in *Bemiss* v. *Commonwealth*, 113 Va. 489, 75 S. E. 115, in its application to sureties.