STATE OF MISSOURI EX REL. FLORA MAE SANDERS, APPELLANT, v. HARTFORD ACCIDENT & INDEMNITY COMPANY OF HARTFORD, CONNECTICUT, RESPONDENT.—143 S. W. (2d) 483.

Kansas City Court of Appeals. July 1, 1940.

*Miniace & Donovan* and *Gladys B. Donovan* for appellant.

*Harding, Murphy & Tucker* for respondent.

*Morrison, Nugent, Berger, Byers & Johns, Amici Curiae.*

SHAIN, P. J.—This is a suit brought against the surety on a bond. The court sustained defendant's general demurrer to the petition. The relator refused to plead further and judgment went against her dismissing her action. She has appealed.

The petition is replete with allegations of fraud and misrepresentations with little statement of facts to support them. Stripped of conclusions of law the petition alleges that A. B. Collins & Company, Inc., was a securities dealer or broker in Kansas City, and as such was required by the State Securities Act, Chapter 40, Revised Statutes 1929, to furnish a bond "running to the people of the State of Missouri, conditioned upon the said A. B. Collins & Company, Inc., properly accounting for all moneys or securities received from or belonging to another, and upon the faithful compliance with the provisions of the 'Missouri Securities Act' by said dealer and by all salesmen registered by it or acting for it;" that on the 31st day of December, 1934, A. B. Collins & Company, Inc., entered into a bond "unto the people of the State of Missouri" in the sum of $5000, with defendant as surety, reciting that A. B. Collins & Company, Inc., had made application to the Secretary of State for registration as a dealer in securities within this State, pursuant to the provisions of the Missouri Securities Act and was about to be registered as such dealer; that "Now, Therefore, if the said A. B. Collins & Company, Inc., as such dealer, and all salesmen registered by and while acting for said dealer, shall faithfully comply with the provisions of the 'Missouri Securities Act,' and shall properly account for all moneys or securities received from or belonging to another, then this obligation to be void, otherwise to be and remain in full force and effect.

"This bond, under the provisions of the 'Missouri Securities Act' may be extended from year to year."

The petition then alleges that on or about the 8th day of January, 1935, A. B. Collins & Company, Inc., sold for relator a certificate in the Metropolitan Savings & Loan Association, at the price of $1462.74 and, with this money, relator opened, up with said company, a so-called "trading account" in her name and "that before this plaintiff (relator) could advise said A. B. Collins & Company, Inc., what stocks or securities to purchase for her account, said A. B. Collins & Company, Inc., without consulting this plaintiff," bought and sold various common stocks in corporations for her account using her money on deposit with it for the making of such purchases, and that all of these purchases and sales were made without her consent, knowledge or authority; that upon learning of these transactions of A. B. Collins & Company, Inc., the relator demanded that it immediately pay over to her the proceeds of the sale of her Metropolitan

734

Savings & Loan certificate; that said company promised that it would do so but, instead, continued to make purchases and sales of stock, assigning them to the account of relator in violation of certain acts of the Securities Act and specifically in violation of the provisions of the bond to "properly account for all moneys or securities received from or belonging to another;" that by said failure of A. B. Collins & Company, Inc., to comply with said Missouri Securities Act, as aforesaid, and because of the breach of the conditions of said bond running to the people of the State of Missouri in not properly accounting to this plaintiff for the proceeds of said savings certificate, she has been damaged in the sum of $1,462.74, with interest thereon at six per cent from the said 8th day of January, 1935. Judgment was prayed for $1,462.74 "as penalty under said bond."

The statute, Section 7744, Revised Statutes 1929, requiring a bond by a securities dealer provides that such bond be "conditioned upon the faithful compliance with the provisions of this chapter by said dealer and by all salesmen registered by him while acting for him."

Relator insists that the court erred in sustaining defendant's demurrer to the petition. In this connection she contends that the unlawful acts of A. B. Collins & Company, Inc., alleged in the petition, constituted a violation of the Securities Act, Chapter 40, Revised Statutes Missouri 1929, and even if they did not, and conceding "that the provisions for accounting is extrastatutory . . .," it is a valid and enforceable obligation under the provisions of the common law.

In opposition to the contentions of relator it is insisted that the bond required by the act is intended to cover only violations of the provisions of the act; that such violations are confined " (1) to transactions in unregistered securities Sections 7725 and 7728; (2) to disobedience of an order to cease and desist (Section 7736); (3) to the publication of advertisements of any security before registration or after the cancellation of the privilege of selling of such security (Section 7741) and (4) to engaging in the business of selling securities by an unlicensed, or unregistered, dealer or salesman (Sections 7744, 7746); that the act was passed for the purpose of protecting the *buyers* of securities, of which plaintiff was not one; that civil relief from the results of, and criminal punishment for, the violation of any of the provisions of the act are contained in Sections 7747, 7748, 7749, 7750, 7751, 7752, 7754 and 7757; that the act does not enter into the field of granting recourse to victims of the nonperformance of contracts by, or of the personal dishonesty of, dealers or salesmen; that the purpose of the act is to require offered securities to be of the proper type, and to exclude those who are not worthy of the privilege of participating in the business of a securities dealer or broker."

We conclude that this analysis of the act is a correct one and this being so it is apparent that that condition of the bond provided for by the statute, to-wit, "the faithful compliance with the provisions

of this Chapter by said dealer and all salesmen registered by him while acting for him,'' was not breached.

Having concluded that no breach of the bond when considered as a statutory obligation has been shown, we come to a consideration of relator's contention that the language of the bond, to-wit, ''shall properly account for *all moneys or securities* received from or belonging to another,'' may be enforced as a common law obligation.

As to the above contention of relator, we must take into consideration that the record clearly shows that the bond in question was given in contemplation of the statute and, in so far as the respondent is concerned, the giving of the bond was an involuntary act, its conditions being imposed by the direction of the State's agency as a prerequisite for relator to receive a license to do business under the provisions of the law. Under the conditions presented we conclude that this court must not indulge in the presumption that the State agency by inclusion of the language quoted above intended to extend the scope of the bond beyond the requirement of the statute. We, therefore, conclude that the language quoted, *supra,* was in, and of, and inseparable from the provisions requiring a faithful compliance with the provisions of the law under which respondent was qualifying to do business. We further conclude that if the state official did intend to impose duties and responsibilities beyond the provisions of the statutes, such act was *ultra vires* and could not impose obligations upon respondent not intended by the statutes.

There are many decisions in Missouri, such as City of St. Joseph ex rel. v. Stone Co., 224 Mo. App. 895, which holds that where a bond is given that does not conform to the statute, the surety may be bound on the theory of common law obligation. In cases wherein the above rule applies, the agency or exacting authority had jurisdiction over common law as well as statutory matters. We conclude that the case at bar is distinguished from the above class of cases in that the exacting agency herein is a creature of the statutes with no power to exact beyond the limitations prescribed by the statute.

The principle that we conclude controls in this case has been recognized and adopted by the Supreme Court in Camdenton Consol. School Dist. v. N. Y. Casualty Co., 104 S. W. (2d) 319, and Fogarty v. Davis, 305 Mo. 288, 264 S. W. 897. In an Iowa case, United States Fidelity & Guaranty Co., v. The Iowa Telephone Co., 166 N. W. 727, 174 Iowa, 476, the court having under consideration the question that is herein involved, declares as follows:

''In the first place, where the bond is given as a statutory obligation, the court will construe it, so far as it properly may, to sustain the statutory purpose, and even though it be informal or contain terms which, considered alone, might indicate an absolute rather than a contingent liability, yet, if it be clear that the intention was to comply with the statute, it will be so treated and enforced  .  .  .  It

is indeed thoroughly well settled that in such case if the added or nonstatutory conditions are separable from those required by the statute they will be treated as surplusage and of no effect . . . And it would be an anomalous holding to say that a bond may be enforced as a statutory obligation, and also as an obligation at common law.''

We conclude that the language above clearly declares the law. Finding no error in the proceedings in the circuit court, the judgment should be affirmed and it is so ordered. *Bland, J.*, concurs; *Cave, J.*, not sitting.